Council present and ready on DiMartile v. Cuomo. Yes, your honor. Yes, your honor. And Mr. Rupp. So we said five minutes aside and I understand Mr. Brody, you would like a minute of rebuttal. Yes, your honor. We don't usually do that, but as long as you stick to a minute, we'll do it this morning. And we're going to give you both two minutes to start, given the unusual format, and then we'll jump in with questions. Mr. Brody, if you're ready to proceed, I believe we're ready. May it please the court, New York is curbing COVID spread. The district court's preliminary injunction would disrupt those efforts. Appellants therefore seek to stay the injunction pending appeal. Appellants will likely succeed on the merits. The state's distinction between large social gatherings and ordinary restaurant service is reviewed under the rational basis test, which the Supreme Court has described as a paradigm of judicial restraint. The district court misapplied the rational basis test by ruling that these particular weddings should be exempt from the state's 50 person gathering limit due to ad hoc case specific factors. That was legal error. New York has a rational basis for distinguishing generally between large social gatherings and ordinary restaurant dining. Large social gatherings have a much higher risk of COVID transmission. That's on page 39 of our addendum. Compared with ordinary restaurant dining, guests at weddings and similar gatherings interact and mingle more. The events last hours longer. There's often singing, cheering, and congregating, and the guests arrive and leave together. The COVID pandemic has been tied to such super spreader events. Most recently, as widely reported in the media, a wedding in Maine that violated that state's 50 person limit on social gatherings has led to 134 COVID cases and at least one death. New York also has a rational basis for adding a 50 person limit on top of masking and distancing rules. The district court's analysis assumed that masking and distancing make the 50 person limit unnecessary, but the crowd limit applies in addition to, not instead of, those measures. It's rational for the state to believe masking and distancing aren't sufficient alone and won't be followed uniformly. Dr. Zucker noted that the wedding party here has stated that they will, just to make sure I'm understanding the record correctly, they will wear masks and observe distancing rules during the wedding? Well they've gotten affidavits from I think around 25 of the guests out of 175 invited. So we don't know what's going to happen. We also don't know how those masks will be worn. You know, there's a certain rate of people who are wearing the mask under their nose. Dr. Zucker said that 33% of people nationwide don't comply and the fact is that we are dealing with rational basis here. So you're not talking about a battle of the experts or a battle of evidence where they can prove somehow that this case deserves an exception. What we're dealing with is, does the state have a rational basis to impose a general rule that you can't have a social gathering over 50 people? And that's what the state has done. If the state is denied, there's a high risk of irreparable harm. The 50 person limit on large social gatherings is a public health measure intended to meet an unprecedented threat. Commissioner Zucker stated that a stay is critically necessary. While nobody can predict with certainty that a particular event will cause a COVID cluster, Dr. Zucker explained that this is the type of event that acts as a super spreader. And again, the 50 person limit applies on top of, not instead of, masking and distancing. The CDC says that generally more people interacting means more risk. That's page 151 of our addendum. Go ahead, Judge Walker. This is just one quick question because I'm a little confused on the facts. The last I heard, there was a wedding scheduled for August 22nd. What's happened to that one? A couple of hours after the administrative stay was issued, the plaintiffs filed a letter with the court saying they would reschedule their wedding. Have they done so? Not to my knowledge. The letter was sort of sine die, indefinite rescheduling. If they decided to schedule it next February, maybe we ought to know that. I'll ask them when they come up. That's correct. And that's the reason why the balance of equities weighs against the plaintiffs. They can still marry. They can have a religious ceremony. They can hold their reception at Arrowhead. The state's simply trying to ensure that the wedding takes place in a safe manner, consistent with generally applicable rules to prevent viral spread. And they can have more than 50 guests if they use a video link or celebrate with other guests in a different place. They can re-time their wedding as they have already. But compared to that, the public interest strongly favors a stay. New York used to- This is Judge Jacobs. Does the state regulations permit them to have a wedding with 49 people in a large social gathering with singing and cheering in a restaurant that has a maximum capacity of 100? It does. That's correct. That would meet both the 50% test and the 50-person limit. Has there been, of course, a large number of social gatherings in protests and demonstrations, which your officer has pointed out. Has there been any effort to find out if any spike has resulted from that? The state is monitoring COVID clusters day by day. So there's a daily list that I've seen of COVID clusters. I don't know if any of those are linked to demonstrations. But it's important to note that there is no exception for demonstrations. If you're saying that what you're doing is rational, then wouldn't you want to know whether the demonstrations are causing any clusters? What if they're not? I'm saying I don't know whether the demonstrations are causing any clusters, but I'm sure the experts who are monitoring these the point is, demonstrations are not allowed in excess of the 50-person limit. So people have flouted the law in that case. But that doesn't mean that you take away the general rule. Under rational basis standard, the question is, is there any conceivable rational basis for putting a limit of 50 on crowds? And the answer is, yes, there is. Because CDC says more people equals more risk. More people interacting, higher risk of COVID. And New York has now, you know, from having been one of the world's worst hotspots, New York now leads the nation in fighting COVID. And that's because the state has exercised its police power, among other things, to limit large social gatherings. And a stay would allow New York to do that. And I want to stress orderly phased reopening. Going all the way back to Williams against Lee optical from 1955, the Supreme Court, the state's allowed to address one industry, one problem at a time. And that's what we're doing here. The state's issuing, the Department of Health is issuing separate guidance for separate allowed to do that under Williamson without violating equal protection. Has there been any social gatherings in New York that have caused a spike? I know you cited one in Maine. Again, there, well, I mean, the origin in New York of COVID, the first super spreader event was a bat mitzvah in New Rochelle. So the answer is that's unqualified. Yes. That's where it began. I remember that. Right. And it's rational for the state to say, okay, we're not going to have large social gatherings like that. And keep in mind the 50 person limit is being adjusted. At first it went to zero and then it went to 10 and then it went to 25 and now 50. And the record shows the governor's and the Department of Health are monitoring the incidence of COVID. And certainly there's every intent to lift the 50 person limit at some point, but we're not there yet. And that's what the governor's public health advisors are telling him. And under the rational basis standard, certainly rational to say, well, because there is this risk of a resurgence of COVID, which you're in Florida, in California, in Georgia, in Texas, because there's this risk, we need to keep that limit in place at 50 at this moment. Now, plaintiffs may have an expert that feels differently, but the elected government of New York state is entitled to the benefit of the rational basis standard. I don't know the configuration of Arrowhead, but a lot of wedding venues have rooms that are adjacent to one another, where you could actually divide up the crowd and put them in compact rooms that would meet the 50 person limit. Would that be satisfactory? I mean, even though the overall wedding party was 175, if they had four rooms that were adjacent to one another, and people adhere to that and stayed in those rooms, and they had some speaker system, that kind of thing, would that be satisfactory? Well, I think that would be up to the Department of Health, because it gets very close to circumventing the 50 person limit, where you say, okay, we're going to put a partition in this room, and people can walk in and out of the partition and mingle with each other, but there's still a partition there, so technically it's two rooms. Now, I will say this, the Arrowhead venue has two separate buildings, which are physically separated from each other, and you could certainly have 50 people in each building of Arrowhead. Again, I'm not a health expert from the Department of Health, but I'm sure the Department of Health could tell Arrowhead whether it would be acceptable to put a partition in or to use separate rooms, but that's not what the plaintiffs are asking for. They're saying, we want 175 people. Yeah. Thank you, Mr. Brody. We'll hear from Mr. Rupp. Yes, good morning, and may it please the court. The state here bears a heavy burden in demonstrating its entitlement to a stay. The first two factors of the traditional standard for a stay are the most critical, and turning to the second factor, irreparable harm, the state defendants have made no effort to demonstrate that they themselves will suffer any irreparable harm if this single wedding goes forward. The only irreparable harm that the defendants claim is harm to the general public, not harm to themselves, but this argument conflates the irreparable harm factor, which is the second factor in the analysis, with the public interest factor, which is the fourth factor in the analysis. The fourth factor is not even reached if the state defendants cannot first demonstrate irreparable harm to themselves. None of the state defendants will suffer any harm, much less irreparable harm, if this single wedding dinner is allowed to go forward. Even if the state can claim the potential of harm to the general public as its own harm, the irreparable harm alleged must be not merely possible, but likely. The state alleges nothing more than holding a single wedding dinner might possibly lead to a super spreader event, but it does not demonstrate that such an outcome is likely. Indeed, the first of the two wedding dinners to take place at Arrowhead venue on August 7th was not a super spreader event. The state has the proven ability through the state liquor authority, the state department of health, and the state police to monitor this wedding dinner closely, to ensure that the venue and the guests adhere to all of the COVID-19 protocols, and the costs of doing so do not constitute irreparable harm to the state. Moreover, even in the highly unlikely event of a coronavirus outbreak, such an event would not cause irreparable harm to the defendants because, as Dr. Zucker points out in his declaration, the state already has counted at least 15 clusters of coronavirus victims that have been traced back to indoor dining, but the state did not find those outbreaks to be so irreparable or harmful that it reinstated the ban on indoor dining. I think here the state is misstating and misframing the issue. The issue is not whether the state has a rational basis in keeping a limit to 50 people for social gathering. The issue is whether when the state has already granted 10,000 exceptions to that to every restaurant and bar in New York state, to serve more than up to 50% occupancy, whether it is at all rational to discriminate against folks who want to go to a wedding and sit down in the same restaurant in the same seat to be served the same meal as they would... It strikes me though it's problematic to frame it simply in terms of this particular wedding. How likely is it to be a super spreader event? Because by that, you could undercut any reasonable and rational public health regulation, so long as you could say, we're not the ones that will cause the grave harm. It's always an aggregate of harm and there will always be some need for exceptions as plans unfold. Why isn't the correct framing here just rational basis? Do they have a rational basis for distinguishing this large social gathering from the ordinary restaurant dining that could take place in this facility? They do not judge because... This is what Judge Sotheby in the Northern District repeatedly asked the Attorney General's office to explain to him. The wedding couple here and the venue have submitted declarations to the court, many of them indicating that they will abide by all of the restaurant protocols that are in place. So they will wear masks to their table. They will remain at their table. The dance floors were pulled up and they will not do dancing. They will not mingle at the bars. They will not go table to table. They just want to hold a dinner. And New York State has already said that this venue, which can seat 438 pre-COVID, can seat 219 people at a time for dinner without a risk to the public health. Yet when these wedding couple, the bride and groom want to hold a wedding for 175 and abide by all of the restaurant protocols that can be enforced by New York State, because they're very good at enforcing with the state liquor authority, the Department of Health, the state police, the state says, no, you can't do that if you call it a wedding dinner. But aren't there just differences between the use of a facility for restaurant dining and holding a social gathering in that same place? I mean, social gatherings are put up so people that know each other can mingle with each other. And it seems rational to me, the state's position, that there'll be more close interactions, even in for longer periods of time, even observing social distancing. Maybe everyone's wearing a mask, but in a restaurant dining, the different tables wouldn't even be talking to each other. Well, Judge, the state trusts restaurant goers to wear their masks and not to mingle and go table to table when it allows them to dine. When we're talking about a constitutional right, equal protection of the laws, the state must engage in a practice that is the least intrusive. And what they've done here is they've said, well, all wedding goers cannot be trusted to do what restaurant goers do, which is wear their masks and abide by social distancing protocols. So we're going to ban that. What the Supreme Court has said is, no, if you have alternative methodologies available to you to ensure compliance, such as enforcement, which the state is very good at doing, you cannot just ban a class of people and conclude that they are presumptively going to violate the law. And that's exactly what Judge Sotheby's seized upon when he said, you're essentially saying to this court that when these wedding goers in these venues say that they will trust them to do that if they're going to a dinner with 219 people, but you say that they're lawbreakers and you can't trust them when they're going to hold a wedding dinner with 175 people. He says that's not rational basis. The rational basis is not toothless. Well, the rational basis, as I understand it, just to make sure I'm not misunderstanding, but I understood rational basis review to be, you look at the distinction that the regulation or the law is drawing, and the state is obligated to articulate a reasonable basis. It's not a fact-finding venture. Once they articulate a reason to distinguish between these two groups, and here it's a social group and it's a restaurant dining. This particular social group happens to want to have their gathering in a restaurant. But the question is whether there's a reason to distinguish between a wedding party and restaurant dining. It's not a fact-finding exercise. They just have to articulate a rational distinction. Am I misunderstanding that? Well, Judge, first of all, I guess I think you are, but first of all, the state did not do that. The Zucker affidavit that they rely on for the stay application is not part of the record on appeal. They did not put that before the court. The judge begged them to give him any rational basis for the distinction that between 219 people dining and turning over those tables over the course of the evening, maybe several hundred people, and a single wedding that books the venue for the entire evening, and they did not do so. So the rational basis test doesn't allow them to come up with some pretextual distinction that's not grounded in any proof or any evidence before the court and simply declare that to be the case. There's several cases that we've seen. Mr. Reptis, Judge Walker, in a dining situation in a restaurant, I take it that people come in, they can sit at their table, they take off their masks because they've got to eat and drink while they're eating, while they're dining, and then they put on the mask when they leave the dining, the table. That's the way people work at restaurants. They would take, wear the mask to the table, wear the mask away from the table. Now, in a wedding situation, it seems to me, and this is I think what Judge, Chief Judge Livingston may have been driving at, when people are mingling, can you expect them to get up from the table, put on their mask, go over and talk to somebody, and then take off their mask when they come back to the table? People are moving around all the time. They'd be taking their mask off, putting it on, and so forth. And there might be a time, of course, when that does not occur. They don't, they don't, they're not wearing their mask. And also the other problem is that the wedding is for hours of this. It's not like people just coming into a restaurant, wearing masks, going to their to their assigned table, and then putting on the mask when they leave and leaving. These people are going to be together. They're going to go and mingle. And it's just common sense that they're not going to always have their masks on because they're going to forget about it. By the way, they're probably serving liquor at this rest at this wedding. So the forgetfulness may magnify. I, you know, it just, I think that there, you can find a difference here between this and restaurants, I believe. Well, Judge, you know, alcohol is served at regular restaurants too. And, and the answer is the, the comparator class here, two restaurant dining, the plaintiffs in this case, and the venue, all indicated that they would abide by every single one of the restaurant dining protocol. So we're talking about a venue that through, through the week, Monday, Tuesday, Wednesday, Thursday, Friday, can seat 219 people safely, according to New York, you know, trust them to wear their masks and abide by all of the things that you just indicated they would do. And they can turn over those tables several times in the night. So they might serve four or 500 people over the course of an evening. And the comparator, that's the comparator class. Now in the same venue, these people want to hold a wedding dinner. They want to book the venue for the entire night. They want to have a similar dinner served by at the same table, socially distanced at the same location served by the same wait staff. They simply want to have a wedding dinner. Will there be a head table with the bride and groom? Yes, but otherwise they're seated for dinner. They're not mingling. They're not getting up. They're not dancing. And the state has every available option to enforce that just as they enforce it with bars and restaurants across the So this is when the state says, well, we assume that you are going to break the law and do other things. The Supreme Court has said, you cannot do that when you're talking about depriving people of equal protection of the laws. If you have an alternative, how long is the wedding going to last? Will it in fact last all evening as most weddings do? You know, I don't know if I know the answer to how I'm going to assume, you know, for the sake of the question that it would be several hours, but, you know, compare that to a restaurant that can seat people at five, seven and nine o'clock. You have people coming in, going out, you know, turning over those tables, mingling, waiting for a seat. Yes. No, I understand. Can I just return to what Judge Walker was asking of your adversary? The wedding was supposed to take place on August 22nd and obviously didn't. Do you have, do your clients have a plan as to when they're now intending to get married? Well, yes, Judge. I spoke to them yesterday in anticipation of a question like that. And they told me that they are essentially waiting for this court to rule on the injunction to see whether they will be allowed to reschedule their wedding. As you might imagine, the Arrowhead venue, just like wedding venues all across the state are hurting for business and there's lots of capacity. So the venue and the couple would be overjoyed to be able to hold it this fall. Well, a stay wouldn't, a stay wouldn't accomplish the problem. You need, what you need is a, um, an affirmative by the court of appeals of the preliminary injunction, right? Um, so you need, you need to get, you need to get the merits or the merits. Well, Judge, actually, we're in the position of having won the injunction, preventing the state from enforcing the 50 person limit against the restaurant when it's serving a wedding dinner, as opposed to a regular dinner. So it's the state. You're right. You're right. You're right. But, but, but the merits will, the decision on the merits will ultimately determine where, when your clients will take the, will have the wedding, right? Well, Judge, if the stay is not entered, I believe that my clients lawfully can schedule and hold their wedding because the injunction would prevent the state from enforcing the 50 person gathering limit. It would not prevent the state from enforcing as I'm sure it would all of the social distancing protocols and all of the other COVID-19 rules applicable to restaurants. But it sounds like if we, if we were to deem this, if we were not to go your way, uh, that to expedite consideration, um, that you might be able, they might be able to plan their, their wedding at some later point, if they were to prevail on the merit. Okay. Well, your honor, you know, they, they probably could, but the question before the court, you know, they were scheduled on August 22nd and judge chin issued the, uh, uh, the, the interim state pending the outcome of this oral argument. I mean, we are talking about a deprivation of constitutional rights. Um, they do have irreparable harm that they demonstrated. There's a presumption of irreparable harm when constitutional rights are invoked. So I don't think the standard or the stay, which is a very heavy burden for the state to win on this matter, um, just involves saying, well, it's not, it's not a great inconvenience to them to have their constitutional rights violated. So, um, I think they should be allowed if the stay is not edited. I don't think it should be because I think the state has, has failed utterly to demonstrate a likelihood of success on the merits and it's made no effort to demonstrate irreparable harm. If, if, uh, the court look, we're to look at the submission by the state, there is absolutely no effort made to satisfy probably the most significant wrong in the analysis, which is irreparable harm. The state simply says, well, well, uh, people might, might, uh, have a Corona virus, uh, outbreak or a cluster, but the standard is that they have to demonstrate irreparable harm to them. And they haven't even attempted to do so. And on behalf of this is not a particularly complicated case in terms of the law and the facts. It seems to me expedited appeal would, um, would you could, you could possibly, um, this could be decided within a month or, or, or five weeks. Um, I don't think, I don't think the state has asked for an expedited appeal here. They, they seem content to, to, uh, proceed down the normal, the normal pathway. And we are, we are in the position of prevailing parties. So we would not ask for an expedited Yeah. Yep. Let's, uh, thank you, Mr. Ruff. Thank you, Mr. Brody. You reserved a one minute of rebuttal. Thank you. Plaintiff's argument doesn't give proper weight to the 50 person limit. They say they'll abide by all protocols, but the crowd limit is one of the protocols. It's not expendable. Uh, with respect to the Zucker declaration, uh, Zucker is before this on this motion to stay. It's in our addendum. And anyway, the points were made previously in the Mizzou declaration, which is at pages 65 to 66 and 68 of our addendum. Uh, and we don't even need evidence under the rational basis standard. All the state has to do is show a conceivable rational basis. And we've done that with respect to enforcement. We don't have resources to enforce against every social event. Uh, and, and we need these rules in place, uh, with plaintiffs say that they're waiting for the court to rule on the injunction before they reschedule their wedding. That essentially negates irreparable harm. They admit that they can have a wedding at any time. Uh, and finally, with respect to predicting that this wedding will cause a COVID cluster, no one can predict with certainty that a particular event will cause a COVID cluster. But Dr. Zucker explains that this is the type of event that acts as a super spreader. This is Judge Jacobs. Um, you're talking about the type of event and your adversary is characterizing it as weddings. Would the 50 person limit apply as well to a fundraising dinner for the local congressman or a banquet in honor of the basketball coach? Yes, your honor. It applies across the board and there are not 10,000 exceptions as council indicates. Uh, so it applies to banquets. It applies to weddings that applies to all, uh, you know, large social events. Um, uh, you know, a person with no symptoms can spread COVID while New York overall is at a 1% positive rate tests from Erie County where this venue is located are coming back 3% positive at a wedding with 175 people. That means five of them will have COVID without knowing it. They'll interact with the other guests who are going to take the virus home and spread it in their communities. That's how a pandemic expands. That's what the state is trying to prevent. Thank you. Thank you, Mr. Brody. Thank you, Mr. Rupp. Um, very well argued on both sides and we'll take the matter under advisement. Thank you, your honor.